# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESTATE OF JAMES C. RENNICK SR.,** <br><br> v. <br><br> **UNIVERSAL CREDIT SERVICES, LLC** | **CIVIL ACTION** <br><br> **NO. 18-3881** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                  **January 14, 2019**

### I. Introduction

This action arises out of a credit report issued by Defendant Universal Credit Services, LLC, which included false reports from two major credit reporting agencies stating that James C. Rennick, Sr. was deceased when he was still alive. Plaintiff, the Estate of Mr. Rennick, alleges that because of the erroneous credit report, Mr. Rennick was denied a home equity line of credit. The Complaint sets forth eight causes of action:

1. **Count I**: Violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.;
2. **Count II**: Intentional infliction of emotion distress ("IIED");
3. **Count III**: Intrusion upon seclusion;
4. **Count IV**: Negligence;
5. **Count V**: Negligent infliction of emotional distress ("NIED");
6. **Count VI**: Defamation;
7. **Count VII**: Gross negligence; and
8. **Count VIII**: Slander of credit.

Presently before this Court is Defendant's Motion to Dismiss Counts II, III, V, and VI of the Complaint for failure to state a claim for which relief can be granted under Federal Rule of

1

Civil Procedure 12(b)(6). There is no Motion to Dismiss Counts I, IV, VII, or VIII of the Complaint–the FCRA, negligence, gross negligence, and slander of credit claims. For the reasons discussed below, the Motion to Dismiss is granted with prejudice as to Counts II, III, and V, and denied as to Count VI.

## II. Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows. Mr. Rennick was an individual who resided at all relevant times in Spring Hill, Florida. (ECF 1, Compl. ¶ 4.) Defendant regularly conducts business in Florida and has its principal place of business in Broomall, Pennsylvania. (Id. ¶ 5.) Michelle Malvarty, the Successor Trustee of Mr. Rennick's living revocable trust, is the daughter of Mr. Rennick and his wife, Angela Rennick, both of whom are now deceased. (Id. ¶ 7.)

Ms. Rennick suffered from Stage IV lung, kidney, bone, and brain cancer prior to her death and had significant limitations on her activities and abilities. (Id. ¶ 8.) Mr. Rennick suffered from a heart condition which also limited his activities and abilities. (Id. ¶ 9.) Due to their health conditions, Mr. and Ms. Rennick sought to renovate their home to accommodate their health needs and to enjoy their home to the fullest before Ms. Rennick passed away. (Id. ¶ 10.) The renovations included changing their kitchen and bathroom to accommodate their needs, as well as adding air conditioning to the third floor of their home so that Ms. Rennick could breathe in the heat, a lanai, and a screened-in porch area so that Ms. Rennick could enjoy the outdoors even with her extreme allergy to bugs in the area. (Id. ¶ 11.) The money from the home equity loan would also provide the funds to pay for Ms. Rennick's anticipated funeral expenses. (Id. ¶ 12.)

On or about January 2017, Mr. Rennick approached a mortgage broker to take out a home equity line of credit. (Id. ¶ 13.) The mortgage broker ran a credit report from Defendant, which

pulled the credit report information from all three major credit reporting agencies–Equifax, Experian, and TransUnion–and concisely placed this information into Defendant's own credit report ("the tri-merge report"). (Id. ¶ 14.) The tri-merge report showed that two agencies were reporting Mr. Rennick as deceased even though he was alive. (Id. ¶¶ 15–16.) As a result, Mr. Rennick was unable to obtain the home equity line of credit. (Id. ¶ 21.)

In June 2017, Ms. Rennick passed away. (Id.) Without the loan, Mr. Rennick was forced to cremate Ms. Rennick as the least expensive way to deal with her remains. (Id.) After Mr. Rennick cremated his wife, Mr. Rennick suffered from "emotional torment" for months, and months later, Plaintiff fell ill and passed away in May 2018. (Id. ¶¶ 23–24.) Plaintiff was also forced to cremate Mr. Rennick. (Id. ¶ 25.)

### III. Procedural History

Plaintiff filed the Complaint in this case on September 10, 2018 (ECF 1). Defendant moved to Dismiss Counts II, III, V, and VI of the Complaint on October 30, 2018 (ECF 2, "Mot."). Plaintiff moved for an extension of time to file a response on November 9, 2018 (ECF 4), which the Court granted on November 13, 2018 (ECF 5). Plaintiff filed a Response in Opposition to the Motion to Dismiss on November 27, 2018 (ECF 6, "Resp.").

### IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

V. **Discussion**

  A. **Parties' Contentions**

    i. **Defendant's Motion to Dismiss**

In the Motion to Dismiss, Defendant contends that Plaintiff's IIED claim (Count II) should be dismissed because Defendant's alleged failure to correct a reporting error in the tri-merge report was merely a mistake, not outrageous conduct sufficient to support an IIED claim. (Mot. at 4.)[1] Similarly, Defendant argues that because Defendant only compiled information provided by credit reporting agencies, Defendant did not cause Plaintiff's alleged emotional distress. (Id. at 4–5.)

Next, Defendant argues that Plaintiff's intrusion on seclusion claim (Count III) fails as a matter of law because Defendant did not intrude on the private concerns of Plaintiff. (Id. at 5.)

---

[1] Because Defendant does not include page numbers in the Motion to Dismiss, the Court refers to the page numbers of the ECF filing.

Because Defendant issued the report to Mr. Rennick's broker in connection with Mr. Rennick's home loan application, Defendant could not have intruded upon Mr. Rennick's seclusion. (Id.) As Defendant did not generate the information in the tri-merge report, Defendant contends, Defendant did not cause Mr. Rennick's alleged mental suffering, as required to support an intrusion on seclusion claim. (Id.)

Further, Defendant argues that Plaintiff's NIED claim (Count V) must be dismissed because Plaintiff has not pleaded any factual scenarios supporting such a claim, as the Complaint fails to allege that Mr. Rennick was subjected to physical impact, was in the "zone of danger," or observed a tortious injury of a close relative because of Defendant's alleged misconduct. (Id. at 6–7.)

Finally, Defendant contends that Plaintiff cannot state a claim for defamation (Count VI) because Defendant did not publish the tri-merge report. (Id. at 8.) Rather, Defendant shared the tri-merge report only with Mr. Rennick and his broker. (Id.)

### ii. Plaintiff's Response

In response, Plaintiff argues that the Complaint states an IIED claim (Count II) because Defendant engaged in "intolerable professional conduct." (Resp. at 3.) Defendant caused Mr. Rennick's emotional distress, Plaintiff contends, because Defendant's failure to conduct an appropriate or reasonable investigation of the inconsistencies in the information contained in the report led to the denial of Mr. Rennick's home loan. (Id. at 4.) Plaintiff also contends that Defendant failed to correct false information in the report after learning it was wrong. (Id.)[2]

---

[2] The Complaint does not allege that Defendant was informed that the information contained in the tri-merge report was incorrect. Therefore, the Court must disregard this additional allegation in ruling on the Motion to Dismiss. See Pa ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (noting that legal theories in plaintiff's opposition brief may be considered "only to the extent that they find support in the allegations set forth in the complaint[]").

5

Plaintiff then argues that the Complaint supports an intrusion on seclusion claim (Count III) because Defendant's creation of a report stating that Mr. Rennick was deceased was unreasonable, inappropriate, and reckless. (Id. at 5.) Plaintiff specifically refutes Defendant's argument that Defendant did not cause Mr. Rennick's mental suffering, arguing that but for Defendant's error, Mr. Rennick would have received a home equity loan. (Id. at 6.)

Next, Plaintiff avers that the NIED claim (Count V) must stand because Defendant owed a fiduciary duty to Mr. Rennick under the FCRA and that, because of Defendant's negligence, Mr. Rennick became ill, passed away, was cremated, and was forced to watch his wife deteriorate in an "extremely uncomfortable environment." (Id. at 8–9.)

Lastly, Plaintiff argues that the facts alleged plausibly support a defamation claim (Count VI), seeking to undermine Defendant's contention that the alleged erroneous information was not published. Plaintiff argues that under Pennsylvania law, disclosure to Mr. Rennick's broker amounts to publication. (Id. at 10.) Plaintiff also disputes that the defamation did not cause Mr. Rennick's injury, alleging that false reporting in a credit report that results in denial of a loan supports a defamation claim. (Id.)

### B. Analysis

As noted above, Defendant moves to dismiss Plaintiff's intentional and negligent infliction of emotional distress, intrusion upon seclusion, and defamation claims–Counts II, III, V, and VI of the Complaint. Plaintiff's claims are all based on Defendant's alleged failure to investigate false information provided by credit reporting agencies before issuing an erroneous report to Mr. Rennick's broker. The Court addresses each count in turn.

### i. IIED Claim (Count II)

To state a claim for IIED under Pennsylvania law, a plaintiff must allege that: "(1) the defendant engaged in extreme and outrageous conduct; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted intending to cause such distress or with knowledge that such distress was substantially certain to occur." Kliesh v. Select Portfolio Servicing, Inc., No. 12-548, 2012 WL 2500973, at *10 (E.D. Pa. June 29, 2012) (Baylson, J.), aff'd 527 F. App'x 102 (3d Cir. 2013) (citation omitted).

Pennsylvania courts "have been chary to allow recovery for a claim of intentional infliction of emotional distress." Hoy v. Angelone, 782 A.2d 745, 753–54 (Pa. 1998). Indeed, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. at 754 (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987) (internal quotation marks omitted)); see, e.g., Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (reversing dismissal of IIED claim where defendant, after striking and killing plaintiff's son with an automobile and failing to notify authorities or seek medical assistance, buried body in a field where it was discovered two months later). "Overreaching, but not abusive, acts suffered in the course of everyday living will not support a claim for intentional infliction [of emotional distress]." Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 276 (3d Cir. 1985); see, e.g., Jones v. Nissenbaum, Rudolph & Seidner, 368 A.2d 770, 773 (Pa. Super. Ct. 1976) (credit collection procedures are not beyond all possible bounds of decency).

Further, the Third Circuit has instructed that "both intentional and negligent infliction of emotional distress require[] a manifestation of physical impairment resulting from the distress or some type of resulting physical harm due to the defendant's outrageous conduct." Messer v. First

7

Fin. Fed. Credit Union of Md., No. 11-4144, 2012 WL 3104604, at *3 (E.D. Pa. July 30, 2012) (Rufe, J.) (quoting Fulton v. U.S., 198 F. App'x 210, 215 (3d Cir. 2006); Reedy v. Evanson, 615 F.3d 197, 21 (3d Cir. 2010) (internal quotation marks omitted)); but see McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 702–03 (E.D. Pa. 2002) (Dalzell, J.) (denying motion to dismiss IIED claim where the plaintiff alleged only "serious emotional harm, psychological distress and damage") (citations omitted).

Defendant argues that Plaintiff's claim should be dismissed because Defendant's alleged error in parroting false information in the tri-merge report is not extreme or outrageous. (Mot. at 3–4.) Plaintiff, on the other hand, contends that Defendant's actions amount to "intolerable professional conduct" sufficient to support an IIED cause of action. (Resp. at 3.)

Plaintiff seeks to analogize Defendant's reporting error in this case to the misconduct at issue in Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979), and Banyas v. Lower Bucks Hospital, 437 A.2d 1236 (Pa. Super Ct. 1981). In Chuy, the Third Circuit affirmed the district court's entry of judgment on a jury verdict against defendant where the defendant's team physician released a statement to the press that the plaintiff was suffering from a potentially fatal disease even though the physician knew that this information was false. 595 F.2d at 1274. And in Banyas, the Superior Court reversed the lower court's dismissal of the plaintiff's IIED claim where the defendants purposely fabricated medical records of an individual to suggest that the plaintiff had killed him, after which the plaintiff was charged with several crimes, including murder. 437 A.2d at 1238, 1239.

The Court is not persuaded that Defendant's error in reporting false information generated by credit reporting agencies raises to the level of intentional professional misconduct alleged in Chuy or Banyas. The Complaint does not allege that Defendant engaged in extreme or outrageous

8

conduct with the purpose of inflicting emotional distress on Plaintiff necessary to support an IIED claim. As Plaintiff must sufficiently allege extreme or outrageous conduct to survive a Motion to Dismiss, the Court need not address the remaining elements of this claim.[3] Plaintiff's IIED claim will be dismissed with prejudice.

### ii. NIED Claim (Count V)

Plaintiff also includes a cause of action for NIED under Pennsylvania law. The tort of NIED has been "limited by court decisions in Pennsylvania." Harper v. Borough of Pottstown, No. 11-1939, 2013 WL 1187051, at *11 (E.D. Pa. Mar. 21, 2013) (Baylson, J.) (citation omitted). To recover for this tort, a plaintiff must demonstrate one of four factual scenarios: "(1) that the [d]efendant had a contractual or fiduciary duty toward him; (2) that [the] [p]laintiff suffered a physical impact; (3) that [the] [p]laintiff was in a 'zone of danger' and a[t] risk of an immediately physical injury; or (4) that [the] [p]laintiff had a contemporaneous perception of tortious injury to a close relative." Id. (quoting Doe v. Phila. Cmty. Health Alts. AIDS Task Force, 745 A.2d 25, 27–28 (Pa. Super. Ct. 2000)).

Similar to an IIED claim, "[i]n all cases, a [p]laintiff who alleges negligent infliction of emotional distress must suffer <u>immediate</u> and <u>substantial</u> physical harm." Harper, 2013 WL 1187051, at *11 (quoting Doe, 745 A.2d at 28); see also Banyas, 437 A.2d at 1239 (dismissing NIED claim where the plaintiff did not allege that he suffered physical harm); but see Doe v. Equifax Servs., Inc., No. 88-3872, 1989 WL 57348, at *8 (E.D. Pa. 1989) (Hannum, J.) ("The Pennsylvania Supreme Court . . . has never specifically stated that physical injury is a necessary

---

[3] Even if the Court were to address all elements of an IIED claim, Plaintiff's claim could not withstand Defendant's Motion to Dismiss because the Complaint fails to plausibly allege that Defendant caused Mr. Rennick any physical harm as required to state an IIED claim. This issue is addressed in greater detail below.

element of a claim for [NIED]."). A plaintiff may "establish physical harm or injury as physical manifestations of a psychic injury" by plausibly alleging "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and . . . ongoing mental, physical and emotional harm." Doe v. Trs. of the Univ. of Pa., 270 F. Supp. 3d 799, 828 (E.D. Pa. 2017) (Padova, J.) (quoting Schmidt v. Boardman Co., 11 A.3d 924, 956 (Pa. 2011)). A plaintiff must also plausibly allege that defendant's negligence was the proximate cause of plaintiff's physical harm. Edmonson v. Bug Stop, Inc., No. Civ.A. 00-2379, 2001 WL 1160761, at *3 (E.D. Pa. Aug. 16, 2001) (Tucker, J.) (citing Love v. Cramer, 606 A.2d 1175, 1177 (Pa. Super. Ct. 1992)).

The Complaint fails to allege that Mr. Rennick experienced physical harm because of Defendant's negligence, which is necessary to sustain an NIED claim. Plaintiff alleges that because Mr. Rennick was denied a loan to renovate his home, Mr. Rennick "bore witness [to] his wife's deteriorating condition with all the attendant emotional and physical manifestations of distress." (Resp. at 9.) This conclusory allegation that Mr. Rennick experienced "physical manifestations of distress" is not sufficient to support Plaintiff's claim.

Plaintiff also alleges that Mr. Rennick "suffered from emotional torment for months" after cremating his wife when she died in June 2017, and that "[m]onths later, Plaintiff became ill and passed away." (Compl. ¶¶ 23–24.) Plaintiff argues that Mr. Rennick's illness and subsequent cremation after he passed away in May 2018, more than one year after Defendant allegedly negligently issued the tri-merge report in January 2017, support an NIED claim because Plaintiff need not have suffered harm instantaneously to state a claim. (See Resp. at 7.)

Though Plaintiff is correct that a defendant's negligence may be actionable even if a plaintiff suffers physical harm at a later time, Plaintiff must still allege that Defendant's negligence

in issuing the inaccurate tri-merge report proximately caused Plaintiff's harm. See Edmonson, 2001 WL 1160761, at *4 (citation omitted) ("It is irrelevant . . . that the [d]efendant's negligence did not take place at the time of the injury, so long as the negligence constituted the proximate cause."); Potere v. City of Phila., 112 A.2d 100, 104 (Pa. 1955) (a plaintiff's emotional distress must be "directly traceable to the peril in which the defendant's negligence placed to plaintiff" to support an NIED claim).

Plaintiff alleges that his illness, death, and cremation were caused by Defendant's erroneous reporting, which caused Mr. Rennick to be denied a home loan. (Resp. at 7.) Based on the facts alleged, the Court cannot reasonably infer that Defendant's production of the tri-merge report proximately caused Mr. Rennick's illness, particularly because Plaintiff alleges that Mr. Rennick's preexisting heart condition was, in part, the reason why Mr. Rennick sought a home loan. (Compl. ¶ 10); see Valentino C. v. Sch. Dist. of Phila., No. Civ.A. 01-2097, 2004 WL 225038, at *11 (E.D. Pa. Feb. 3, 2004) (Hutton, J.) (granting summary judgment on NIED claim where the plaintiff suffered nightmares and had difficulty sleeping even before the incident alleged). Nor can the Court infer that Plaintiff's death or cremation are directly traceable to Defendant's alleged negligence, as required to support an NIED claim.

Because Plaintiff has failed to allege that Defendant proximately caused Mr. Rennick's alleged physical harm, the Court need not determine whether the Complaint presents any of the four factual scenarios supporting an NIED claim. The Court concludes that Plaintiff's NIED claim cannot withstand Defendant's Motion to Dismiss and will be dismissed with prejudice.

### iii. Intrusion Upon Seclusion Claim (Count III)

In Pennsylvania, an invasion of privacy claim is comprised of four distinct, yet interrelated torts, including intrusion upon seclusion. Vogel v. W.T. Grant Co., 327 A.2d 133, 129 n.9 (Pa.

1974); Harris v. Easton Pub. Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). Pennsylvania courts, looking to the Restatement (Second) of Torts § 652B (1977), have defined an intrusion upon seclusion claim as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Smith v. Unilife Corp., 72 F. Supp. 3d 568, 574 (E.D. Pa. 2014) (Baylson, J.) (quoting Kline v. Sec. Guards, Inc., 386 F. 3d 246, 260 (3d Cir. 2004)).

To state a claim for intrusion upon seclusion, a plaintiff must establish "conduct demonstrating 'an intentional intrusion upon the seclusion of [a plaintiff's] private concerns which was substantial and highly offensive to a reasonable person, and must aver sufficient facts to establish that the information disclosed would have caused mental suffering shame or humiliation to a person of ordinary sensitivities.'" Boring v. Google Inc., 362 F. App'x 273, 278–79 (3d Cir. 2010) (quoting Pro Gold Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)).

Plaintiff avers that Defendant intruded upon Plaintiff's seclusion by providing Plaintiff's broker with a report containing information that Defendant knew or should have known was inaccurate. (Resp. at 5–6.) Defendant contends that this claim must be dismissed because Defendant did not invade Mr. Rennick's privacy by providing his broker with a requested report so that Mr. Rennick could secure a home loan. (Mot. at 5.)

The Court concludes that Plaintiff has failed to state an intrusion upon seclusion claim because the Complaint does not allege that Defendant intruded upon his private concerns. The factual allegations contained in the Complaint do not support the reasonable inference that Defendant invaded Mr. Rennick's privacy by providing a report requested by Mr. Rennick's broker

in connection with Mr. Rennick's home loan application. Accordingly, Plaintiff's intrusion upon seclusion claim will be dismissed with prejudice.

### iv. Defamation Claim (Count VI)

To make out a claim for defamation under Pennsylvania law, "a plaintiff must show harm resulting from the publication of defamatory material." Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 461 (E.D. Pa. 2010) (Savage, J.); 42 Pa.C.S. § 8343 (West, 1998)[4]. Specifically, a claim for defamation includes the following elements:

(1) The defamatory character of the communication.

(2) It's publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) (citations omitted); Sottosanti-Mack v. Reinhart, 173 F. Supp. 3d 94, 104 (E.D. Pa. 2016) (Perkin, M.J.) (citing § 8343(a)).

Here, Plaintiff alleges that Defendant knowingly, recklessly, or negligently made the false and defamatory statement to a third party that Mr. Rennick was deceased in the tri-merge report. (Compl. ¶ 50.) Defendant argues that it did not publish the allegedly defamatory statements in the tri-merge report because the report was only shared with Mr. Rennick and his broker. (Mot. at 8.) Defendant does not cite any case law stating that an allegedly defamatory statement is published only if it shared with the community at large. (See id.)[5] Contrary to Defendant's proposition, the

---

[4] This statute codified a plaintiff's burden of proof on a common law defamation claim, which Plaintiff brings in this action. See Manno, 439 F. Supp. 2d at 431 n.23. This statute does not create a statutory cause of action for defamation in Pennsylvania. Id.

[5] Defendant further argues that the statements in the tri-merge report do not support a defamation claim because Plaintiff requested that Defendant delivered the report to his broker. (Mot. at 8.)

Third Circuit has held that "[p]ublication consists of the communication of the information to at least one person other than the person defamed." Cushman v. Trans Union Corp., 115 F.3d 220, 230 (3d Cir. 1997) (citation omitted); see also Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 432 (E.D. Pa. 2006) (Brody, J.) (denying motion for summary judgment on plaintiffs' defamation claim where there was a genuine issue as to whether defendant published derogatory information to reporting agencies that was reflected in plaintiffs' credit reports). This Court has not located any precedential judicial decisions suggesting that the "one person other than the person defamed" to whom an allegedly defamatory statement is communicated must be someone other than a plaintiff's broker or representative.

Defendant also contends that the deceased notation in the tri-merge report was not defamatory because Plaintiff "was so obviously not deceased" that the report could not have "grievously fractured [his] standing in the community of respectable society." (Mot. at 8) (quoting Graboff, 744 F.3d at 136). However, as Defendant notes, a statement is defamatory if it "deter[s] third persons from associating or dealing with [the defamed person]." (Mot. at 7) (quoting Graboff, 744 F.3d at 136); see also Sheffer v. Experian Info. Sols., Inc., No. CIV.A. 02-7407, 2003 WL 21710573, at *4 (E.D. Pa. July 24, 2003) (Schiller, J.) (citation omitted) ("Although there is relatively little discussion of defamation claims under Pennsylvania law in cases involving credit reports, precedent suggests that a false statement in a credit report may qualify as defamatory if it tends to deter third persons from dealing with the plaintiff."). Judges in this District have

---

However, this argument appears to contradict Plaintiff's allegation that Mr. Rennick's broker, not Mr. Rennick, "ran a tri-merge credit report" when Mr. Rennick approached the broker to secure a home loan. (Compl. ¶ 14.) As the Court must accept facts alleged in the Complaint as true at this stage, the Court must disregard this factual allegation in ruling on the Motion to Dismiss. See Cichonke v. Bristol Twp., No. 14-4243, 2015 WL 1345439, at *13 n.19 (E.D. Pa. Mar. 25, 2015) (Buckwalter, J.) ("At the motion to dismiss phase, Defendants' . . . assertions cannot contradict Plaintiff's allegations in the Amended Complaint.").

14

concluded that an inaccurate credit report that leads a third party to deny the defamed person a line of credit, as Mr. Rennick sought in this case, may be defamatory. See, e.g., Sheffer, 2003 WL 21710573, at *4 (denying summary judgment on the plaintiff's defamation claims where an inaccurate statement on plaintiff's credit report that he was deceased led plaintiff's bank to deny his request for a greater line of credit). Therefore, the Complaint plausibly alleges that Defendant published defamatory statements sufficient to overcome Defendant's Motion to Dismiss.

## VI. Conclusion

Defendant's Motion to Dismiss will be granted with as to Counts II, III, and V, and denied as to Count VI.[6] Counts I, IV, VII, and VIII will proceed.

An Appropriate Order follows.

O:\CIVIL 18\18-3881 Rennick v. Universal Credit Services LLC\Memo re MTD.docx

---

[6] Though Defendant does not seek dismissal of any of Plaintiff's common law claims on the basis of preemption, the Court notes that judges in the Third Circuit have concluded that provisions of the FCRA may preempt defamation, invasion of privacy, and negligence claims. See, e.g., Bolduc v. Experian Info. Sols., Inc., No. 16-1367, 2017 WL 126114, at *3 (E.D. Pa. Jan. 12, 2017) (Ditter, J.) (dismissing plaintiff's defamation claims with prejudice because they were preempted by the FCRA); Brignola v. Home Props., L.P., No. 10-3884, 2013 WL 1795336, at *9 (E.D. Pa. Apr. 26, 2013) (Jones, J.) ("[U]nless the credit furnisher reported false information with malice or willful intent, a plaintiff's defamation claim is preempted by the FCRA."); but see Manno, 439 F. Supp. 2d at 430–31 (denying summary judgment on defamation claim that would be preempted if plaintiff failed to prove at trial that defendant acted with malice or willful intent, and listing cases in support). See also Shannon v. Equifax Info Servs., LLC, 764 F. Supp. 2d 714, 727–28 (E.D. Pa. 2011) (Brody, J.) (granting summary judgment on plaintiff's standalone negligence claims outside of the FCRA as well as on plaintiff's invasion of privacy claim where plaintiff failed to allege willful invasion of privacy, and so the claim was preempted by the FCRA); Gagliardi v. Equifax Info. Servs., LLC, No. 09-1612, 2011 WL 337331, at *13 (W.D. Pa. Feb. 3, 2011) (noting that plaintiff's NIED claim, which was governed by principles of negligence, would be preempted by the FCRA).